IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEJUAN JENKINS, Y43195,<br>ANTRAY HALL, Y38802,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>ANTHONY WILLS,<br>C/O REAVES,<br>C/O PEDRO,<br>C/O ROBERTS,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 24-cv-1488-DWD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiffs Kejuan Jenkins and Antray Hall, inmates of the Illinois Department of Corrections (IDOC), bring this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of their constitutional rights at Menard Correctional Center (Menard). (Doc. 1). The Complaint was signed only by Defendant Jenkins (Doc. 1 at 7), so on July 16, 2024, the Court issued an Order wherein it warned Defendant Hall of the difficulties of group litigation and invited him to express his desire to proceed by August 5, 2024. (Doc. 15). In the interim, Plaintiff Jenkins filed multiple motions for emergency injunctive relief. (Docs. 13, 17, 18). Given the nature of the underlying allegations, and the recent developments, the Court now finds it impractical for the two co-Plaintiff's to proceed jointly, because the emergency motions demonstrate that divergent facts are emerging as to the two plaintiffs. To most quickly address Mr. Jenkins' allegations, and to still give

Mr. Hall's allegations full attention and thorough review, the Court will sever Plaintiff Hall into a separate lawsuit. Jenkins will be allowed to proceed in this lawsuit on his own, and a response to his recent motions will be directed.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Jenkins alleges that on April 7, 2024, he and fellow inmates (including Plaintiff Antray Hall) were escorted to the shower in the West House by Defendant Reaves. (Doc. 1 at 6). While in the shower, Jenkins noticed the presence of "flamboyant homosexuals" in the shower who were naked and fondled their genitals while watching others. The other inmates participated in sexual acts in plain sight. Once out of the shower, Jenkins stopped Defendant Reaves, informed him of the encounter and asked if anything could be done to improve privacy such as shower curtains. Reaves told him that if he did not want to be watched in the shower or did not want to observe that sort of behavior, then he should not attend the shower. Reaves further indicated he liked what he saw and would not complain. (Doc. 1 at 6). Jenkins alleges a grievance was filed the same day, but no response has been received to date.

On April 8, 2024, Defendants Roberts and Pedro escorted Jenkins and Hall to the shower. The shower was again occupied by flamboyant homosexuals who extended an invitation for others to join "the party." (Doc. 1 at 6). Jenkins and others declined and one of the inmates tried to touch Jenkins' chest. The homosexual inmates threatened that if Jenkins did not join in, they would beat him. Hall then interjected and insisted the groups should leave each other alone. The threatening inmates moved to one side and engaged in loud sexual conduct while calling Jenkins' name. Defendants Pedro and Roberts peered into the shower and began rooting for the inmates engaged in sexual behavior. Upon exiting the shower, Jenkins told Pedro and Roberts that he was not a homosexual and he believed the shower arrangement was violating his PREA rights. He again asked for a different shower time or shower curtains, but Roberts simply told him not to come to the shower if he found the arrangement objectionable. (Doc. 1 at 6). Jenkins claims that this amounted to physical excessive force because he was being forced into participating in homosexual acts.

On April 10, 2024, Jenkins and Hall wrote a letter to the Warden and PREA coordinator to no avail.

Again, in April of 2024[1], Jenkins and Hall were escorted to the shower by Defendant Reaves. Once the shower door was closed, homosexuals surrounded Jenkins and told him to bend over. Reaves heard the commotion, looked into the shower, and told the homosexuals to get Jenkins. The homosexuals then began to punch Jenkins and

---

[1] Jenkins gave a specific date, but it is illegible. (Doc. 1 at 6).

Hall, and Reaves waited to disperse the fight. No one was disciplined for the altercation. Jenkins alleges that Reaves violated his PREA rights, failed to protect him, was negligent, and committed "physical excessive force to sexual assault." (Doc. 1 at 6). Jenkins claims there is no supporting evidence because there are no cameras in the West House, however, he has written to Springfield to request cameras and more privacy in the showers.

In the demand for relief, Jenkins sought shower curtains, monetary compensation for "physical excessive force" and PREA violations, cameras in the West House, and an immediate transfer. (Doc. 1 at 7). He also asked to be "approved for House Bill 3755." (Doc. 1 at 7).

In a Motion (Doc. 13) filed July 15, 2024, Jenkins made multiple requests and indicated that Defendant Reaves had begun to "retaliate" every day. He did not describe what acts constituted retaliation. In two Motions (Docs. 17, 18) filed July 17, 2024, Jenkins alleges that Reaves works his gallery five days a week. On July 5, 2024, Reaves approached his cell before yard and asked if he was going to drop his lawsuit. (Doc. 18 at 1). Jenkins indicated he had tried to be reasonable with Reaves and to resolve his issues through the prison, to no avail. He indicated left without any option to address the shower situation, he felt it necessary to pursue a lawsuit. Reaves indicated it did not matter, and he returned to Jenkins' cell approximately 30 minutes later with two inmate-workers. Reaves opened Jenkins' cell and allowed the two inmates to batter him while he stood by and laughed. Jenkins' chin was "busted open," and he claims it was still injured at the time he filed his motion.

He further alleges that on July 10 and 11, 2024, Defendant Roberts helped his gallery officer distribute trays. Roberts directed a John Doe officer to withhold his tray because he was a tattletale and was trying to stop the entertainment provided by the LGBTQ community. The John Doe officer withheld Plaintiff's tray and made verbal threats. Since that time, correctional officers that Jenkins does not recognize regularly walk past his cell and deploy mace. He claims he has also been beaten by other individuals.

As emergency injunctive relief, Jenkins seeks: help being approved under House Bills 3775 and 3779, an immediate transfer from Menard, and help being approved for an adult transitional center. (Doc. 18 at 2). He claims he has seven months left to serve and believes he will not make it home without court intervention. (Doc. 18 at 2).

Based on the allegations in the Complaint, the Court designates the following counts:

>   Claim 1:  Eighth Amendment cruel and unusual punishment claim against Defendant Reaves related to the April 7, 2024 shower incident;
>
>   Claim 2:  Eighth Amendment cruel and unusual punishment claim against Defendants Pedro and Roberts related to the April 8, 2024 shower incident;
>
>   Claim 3:  Eighth Amendment cruel and unusual punishment claim against Defendant Reaves for the final April 2024 shower incident that resulted in a physical altercation;
>
>   Claim 4:  Failure to intervene claim against Defendant Reaves for the April 2024 shower altercation;
>
>   Claim 5:  State law negligence claim against Defendant Reaves for the last April 2024 shower incident that resulted in the altercation.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### **Preliminary Dismissals**

Jenkins alleges throughout the complaint that his PREA rights have been violated. However, there is no private cause of action under PREA, so he cannot proceed on any such claim. *See McRae v. Myers*, No. 22-1821, 2023 WL 2423590, at *3 (7th Cir. Mar. 9, 2023), *cert. denied*. There is also no freestanding constitutional right to a PREA investigation under § 1983. *See e.g., Walters v. Bello*, 2024 WL 3252508 at *3 (S.D. Ind. June 28, 2024). Accordingly, any of Jenkins' allegations related to PREA are dismissed with prejudice.

Jenkins named Anthony Wills, the Warden of Menard, as a Defendant, but his only mention of Wills is that he sent him a letter about the shower issue in mid-April. The transmission of a single letter to a prison official, without a description of its contents, or any suggestion that it might have been received, is not enough to sustain a § 1983 claim premised on that individual's personal responsibility for some issue mentioned in the correspondence. *See e.g., Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (a letter-writing campaign to high-level officials such as local government officials or the prison warden is not sufficient to sustain a claim premised on personal involvement under §

1983). Therefore, Jenkins' complaint is insufficient to maintain a claim against Wills in his individual capacity.

## Analysis

Aside from his mention of PREA, Jenkins characterizes his allegations concerning the three shower incidents as "physical excessive force" by the Defendants because he was exposed to the risk of an assault, but the Court finds this theory a poor fit for the factual allegations. Perhaps the more appropriate framing is just to consider Jenkins' allegations under the prohibition on cruel and unusual punishment. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* at 834. The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" that a prison employee's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." *Id.* (citation omitted). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (citation omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Taking Jenkins' allegations at face value, surely he has identified conduct sufficient to suggest a violation of the prohibition on cruel and unusual punishment. He alleges that on at least three occasions, Defendants Reaves, Pedro and Roberts knowingly placed him in closed quarters in a shower with homosexual inmates who were openly engaging in sexual conduct and were attempting to force him to join against his will. On the third occasion, his protestations led to a physical altercation, which Reaves watched and encouraged before intervening. On the allegations presented, Jenkins may proceed on Claims 1-3 against Reaves, Pedro and Roberts.

Jenkins may also proceed against Reaves on Claim 4 for a failure to protect him during the late-April shower altercation. Finally, Jenkins may also proceed against Reaves on the lesser included state tort theory of negligence. If Jenkins' other federal claims are later dismissed, the Court may relinquish supplemental jurisdiction over this claim.

## Motions for a Preliminary Injunction or Temporary Restraining Order

Jenkins' allegation in his July 15, 2024, Motion (Doc. 13) that Reaves has "retaliated" are too generic to warrant relief, and the other issues discussed in the Motion have now been resolved. By contrast, his allegations in his July 17, 2024, Motions (Docs. 17 and 18) have not yet been addressed and are much more detailed. The two Motions are identical. In each, Jenkins alleges that Reaves queried him about his lawsuit and then brought two inmates to his cell to beat him while Reaves stood by. Jenkins also alleges that Roberts acknowledge his lawsuit and prompted another correctional official to deny him food and to harass him. Finally, he indicates that because of his lawsuit, correctional

staff he does not recognize routinely visit his cell to deploy mace, deny him food, or allow others to beat him.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

The Court takes Jenkins' new allegations seriously because he suggests that he has recently been the victim of an assault at the direction of Reaves by other inmates in retaliation for filing this lawsuit. This case presents an extreme circumstance. Generally, the Court will not entertain any request for injunctive relief where it is not related to an underlying operative claim, nor is the Court likely to grant a prison transfer. *See e.g., Girtler v. Fedie*, 835 Fed. App'x 124 (7th Cir. 2020) (prison transfers are the business of prison officials and federal courts must afford broad deference to prisons on this issue). However, here, Plaintiff alleges that the same defendants implicated in his underlying claims have now learned of his lawsuit and have allowed other inmates to commit violence against him as retaliation for this lawsuit. Given the nature of the underlying

factual allegations, and this new development, the Court finds it appropriate to mandate the Defendants to respond to Jenkins' emergency motions. (Docs. 17, 18). In responding, the Defendants should be sure to provide some sort of evidence about Plaintiff's current physical condition given that he asserts he was recently assaulted.  The Defendants do not need to respond to Jenkins' requests for relief related to Illinois House Bills 3755 or 3779[2], or his placement at an adult transition center, because the Court does not have jurisdiction to offer relief related to any of these options.

### Severance of Plaintiff Antray Hall

As the Court mentioned in the introductory paragraph, this Complaint was filed on behalf of Kejuan Jenkins and Antray Hall, but Jenkins was the only one to sign the pleading.  On July 16, 2024, the Court warned Hall of the risks of joint litigation and invited him to inform the Court if he wished to proceed. (Doc. 15). Jenkins tried to assert for Hall in his Motion (Doc. 15) that Hall did not wish to proceed, but an inmate pro se litigant cannot make legal representations on behalf of another inmate, so this effort is not sufficient to terminate Hall's participation.  On July 31, 2024, Hall indicated in a response that he wished to proceed (Doc. 19), and he filed a signed complaint (Doc. 20). However, given Jenkins' recent emergency motions, the Court finds it impractical to allow the two plaintiffs to proceed jointly because the emergency motions and recent

---

[2] Both are Bills about the placement of IDOC inmates in local county jails if there are available re-entry programs.   *See,* Illinois General Assembly, Bills & Resolutions, Bill Status of HB 3755, https://www.ilga.gov/legislation/BillStatus.asp?DocNum=3755&GAID=17&DocTypeID=HB&LegId=149013&SessionID=112&GA=103, last accessed July 30, 2024; and Illinois General Assembly, Bills & Resolutions,         Bill         Status         of         HB         3779, https://www.ilga.gov/legislation/BillStatus.asp?DocNum=3779&GAID=17&DocTypeID=HB&LegId=149037&SessionID=112&GA=103, last accessed July 30, 2024

developments alleged by Jenkins are not intertwined with Hall, and will require intensive immediate attention. A district court has discretion to sever a party at any time. Fed. R. Civ. P. 21. Here, the Court exercises that discretion to sever Plaintiff Antray Hall into a separate case. In the new case, Hall's pleading will be reviewed by the terms of 28 U.S.C. §1915A.

### Disposition

**IT IS HEREBY ORDERED THAT** the Clerk of Court shall sever Plaintiff Antray Hall into a new lawsuit against Defendants Wills, Reaves, Roberts, and Pedro. In the new lawsuit, the Clerk shall docket:

- This Memorandum and Order;
- Hall's Response (Doc. 19);
- The Complaint (Doc. 20);

The Clerk shall then **TERMINATE** Plaintiff Antray Hall from this action and no effort shall be made to collect a filing fee from him for this action. In the new action, the Clerk of Court is **DIRECTED** to seek Hall's consent[3], and to seek an application to proceed *in forma pauperis* or the $405 filing fee.

**IT IS HEREBY ORDERED THAT Claims 1 and 3-5 survive against Defendant Reaves, and Claim 2 survives against Defendants Pedro and Roberts**. By contrast, all claims against Anthony Wills in his personal capacity are insufficient, so the Clerk of Court is **DIRECTED** to **TERMINATE** Wills in his individual capacity. However,

---

[3] The Court acknowledges that Hall signed a consent form for this case (Doc. 8), but because he is now proceeding separately, the Court will confirm that he still wishes to consent.

Anthony Wills is the current warden of Menard, so he will remain in this lawsuit in his official capacity only, solely for the purpose of addressing any potential injunctive relief.

The Clerk of Court is **DIRECTED** to prepare for Defendants Reaves, Pedro, Roberts, and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), Motions for a Preliminary Injunction (Doc. 17, 18) and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **<u>Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.</u>**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

As explained above a ruling on Jenkins' Motions for a Preliminary Injunction or Emergency Relief (Docs. 17, 18) is **DEFERRED** and the Defendants are **DIRECTED** to respond to his Motions within **14 days** of counsel entering an appearance on their behalf.

Jenkins' Motion (Doc. 15) is **DENIED** for the reasons explained above.

**IT IS SO ORDERED.**

Dated: August 1, 2024

DAVID W. DUGAN
United States District Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.