IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEJUAN JENKINS, Y43195,<br>ANTRAY HALL, Y38802,<br><br>      Plaintiffs,<br><br>vs.<br><br>ANTHONY WILLS,<br>C/O REAVES,<br>C/O PEDRO,<br>C/O ROBERTS,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 24-cv-1488-DWD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiffs Kejuan Jenkins an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center (Menard), bring this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Upon initial review, the Court allowed Plaintiff to proceed on five claims related to incidents that occurred in April of 2024. The Court also directed the Defendants to respond to Plaintiff's Motions for Emergency Relief (Docs. 17, 18). Defendants responded (Doc. 38), and Plaintiff filed several subsequent related Motions (Docs. 39, 43, 48). On October 8, 2024, the Court held a hearing on the issue of Plaintiff's requests for emergency injunctive relief. Although the Court does not find that there is an immediate threat of serious physical harm, defendants are directed to update the Court as explained in this Order.

## Background

Plaintiff alleges that on April 7, 2024, he and fellow inmates were escorted to the shower in the West House by Defendant Reid[1]. (Doc. 1 at 6). While in the shower, Plaintiff noticed the presence of "flamboyant homosexuals" who were naked and who participated in sexual acts in plain sight. Once out of the shower, Plaintiff stopped Defendant Reid, informed him of the encounter and asked if anything could be done to improve privacy such as shower curtains. Reid told him that if he did not want to be watched in the shower or did not want to observe that sort of behavior, then he should not attend the shower.

On April 8, 2024, Defendants Roberts and Pedro escorted Plaintiff to the shower. The shower was again occupied by "flamboyant homosexuals" who extended an invitation for others to join "the party." (Doc. 1 at 6). A commotion ensued, Defendants Pedro and Roberts peered into the shower and began rooting for the inmates engaged in sexual behavior. Plaintiff complained and asked for a different shower time or shower curtains, but Roberts simply told him not to come to the shower if he found the arrangement objectionable. (Doc. 1 at 6).

Again, in April of 2024, Plaintiff was escorted to the shower by Defendant Reid. Plaintiff alleges a fight ensued and Reid either did not intervene or purposefully delayed his intervention.

---

[1] Initially, this individual was identified by Plaintiff as Defendant Reaves, but the Defendants' Answer indicates that the correct individual is Steven Reid. (Doc. 47). Plaintiff confirmed at the October 8 hearing that the person his complaint refers to is Reid. Accordingly, the Court will refer to Reaves as Reid in all future orders.

The operative claims in the case after initial review are:

**Claim 1:** **Eighth Amendment cruel and unusual punishment claim against Defendant Reaves related to the April 7, 2024, shower incident;**

**Claim 2:** **Eighth Amendment cruel and unusual punishment claim against Defendants Pedro and Roberts related to the April 8, 2024, shower incident;**

**Claim 3:** **Eighth Amendment cruel and unusual punishment claim against Defendant Reaves for the final April 2024 shower incident that resulted in a physical altercation;**

**Claim 4:** **Failure to intervene claim against Defendant Reaves for the April 2024 shower altercation;**

**Claim 5:** **State law negligence claim against Defendant Reaves for the last April 2024 shower incident that resulted in the altercation.**

The Court directed the Defendants to respond to the Motions with special attention to Plaintiff's physical condition in light of the alleged assault. (Doc. 21).

## The Motions

In a Motion (Doc. 13) filed July 15, 2024, Plaintiff made multiple requests and indicated that Defendant Reid had begun to "retaliate" every day. He did not describe what acts constituted retaliation. The Court denied the Motion as overly vague. (Doc. 16).

In two nearly identical Motions (Docs. 17, 18) filed July 17, 2024, Plaintiff alleged that Reid works his gallery five days a week. On July 5, 2024, Reid approached his cell before yard and asked if he was going to drop his lawsuit. (Doc. 18 at 1). Plaintiff indicated he had tried to be reasonable with Reid to no avail. He indicated left without any option to address the shower situation, he felt it necessary to pursue a lawsuit. Reid indicated it did not matter, and he returned to Plaintiff's cell approximately 30 minutes

later with two inmate-workers. Reid opened Plaintiff's cell and allowed the two inmates to batter him while he stood by and laughed. Plaintiff's chin was "busted open," and he claimed it was still injured at the time he filed his motion.

He further alleged that on July 10 and 11, 2024, Defendant Roberts helped his gallery officer distribute trays. Roberts directed a John Doe officer to withhold his tray because he was a tattletale and was trying to stop the entertainment provided by the LGBTQ community. The John Doe officer withheld Plaintiff's tray and made verbal threats. Since that time, correctional officers that Plaintiff does not recognize have walked past his cell and deployed mace. He claimed he has also been beaten by other individuals.

Plaintiff subsequently filed Motions for Emergency Relief (Docs. 39, 43) wherein he alleged that other inmates recently informed him that Defendant Reid was attempting to bribe other inmates to attack him with the promise of contraband. Plaintiff claims that with these threats in mind, he is afraid to leave his cell. The motions are identical, but the second motion is supported by affidavits of fellow inmates attesting to the potential threat. (Doc. 43).

On September 30, 2024, Plaintiff filed a "Motion to Document" wherein he indicated that he had heard rumors about Defendant Reid being placed on administrative leave for orchestrating an inmate-on-inmate assault against other prisoners. (Doc. 48). He also provided unrelated information about the response time for an emergency grievance he filed a year ago, and about the general state of health care at the prison.

In an October 2, 2024, filing (Doc. 49), Plaintiff provides further allegations about the state of healthcare at the prison and his efforts to seek various medical attention. He

also alleges that he still has a scar on his chin from the July 2024 assault, which was not visible at his September medical exam because he had facial hair at the time. (Doc. 49 at 3-4). He attached many exhibits, including affidavits, and a lengthy Wexford manual.

In response to the initial emergency motions (Docs. 17, 18), the Defendants argue that Plaintiff's allegations in his complaint and motions do not have any contemporaneous support in his prison records. (Doc. 38 at 5). Specifically, they argue there is no record of him filing Prison Rape Elimination Act (PREA) reports about the shower incidents either with the PREA coordinator or the Warden, there is no evidence that he complained to any counselors about his situation either about the shower incidents or the July assault, and he has no current medical injuries that require treatment. They supported their response with medical records (including a September 2024 evaluation specific to the allegations of the July assault), affidavits, and Plaintiff's counseling summary.

### The October 8, 2024, Hearing

At the hearing, the Court reiterated that injunctive relief is almost always limited to issues directly tied to the underlying claims and parties but noted that it took Plaintiff's allegations of immediate physical retribution for filing this lawsuit seriously. To this end, the Court inquired directly with Plaintiff about his current situation. Plaintiff testified that he had not experienced any assaults within the last two weeks, or since the July 2024 incident that promoted his emergency motions (Docs. 17, 18). He indicated that he heard rumors about Defendant Reid being on administrative leave, though neither he nor the Assistant Attorney General were able to confirm this allegation. Plaintiff also testified

that in mid-August he was moved from Five gallery where Reid works to Three gallery, so regardless of Reid's status, Plaintiff had not seen him recently at the time of the hearing. He further testified that he had no recent exposure to mace. As to the food that he alleged Defendant Roberts was withholding, he testified that Roberts only occasionally withholds a tray, and that it only happened a single time in recent weeks.

## Analysis

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

The Court continues to take Plaintiff's allegations about his physical safety very seriously. However, on Plaintiff's own testimony, he does not face a present threat of physical violence from Defendant Reid, he has not recently been exposed to mace in his cell, and Roberts does not frequently work in his area or deny him trays. Plaintiff's move from Five gallery where Defendant Reid works to Three gallery in mid-August mitigates the most serious concerns about Plaintiff's current safety. Plaintiff agreed at the hearing

that he did not have knowledge of an impending serious assault or attack. Given that there does not appear to be an immediate threat, the Court will deny the requests for injunctive relief (Docs. 17, 18, 39, and 43) in all but one respect. Defense counsel is hereby **DIRECTED** to inform the Court at any time during the pendency of this case if Plaintiff will again be housed in Five gallery where Defendant Reid works, or if Reid is reassigned to work on Plaintiff's gallery.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Motions for Emergency Relief (Docs. 17, 18, 39, 43, and 48) are **DENIED** in all respects, except that Defendants'/Defense counsel are **DIRECTED** to **IMMEDIATELY** notify the Court if Plaintiff is going to be housed in Five gallery were Defendant Reid works, or if Defendant Reid is reassigned to work in Plaintiff's living area.

Defendants' Motion to Substitute (Doc. 42) is **GRANTED**. The Motion seeks to replace Exhibit I of document 38 with a signed affidavit. The Clerk of Court is **DIRECTED** to replace Doc. 38-9 with Doc. 42-1.

**IT IS SO ORDERED.**

Dated: October 9, 2024

_____
DAVID W. DUGAN
United States District Judge