IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEJUAN JENKINS, Y43195,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 24-cv-1488-DWD |
| | ) |
| **ANTHONY WILLS,** | ) |
| **STEVEN REID,** | ) |
| **TYLER PEDROLEY,** | ) |
| **DALTON ROBERT,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiffs Kejuan Jenkins an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center (Menard), bring this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Upon initial review, the Court allowed Plaintiff to proceed on five claims related to incidents that occurred in April of 2024. The Court also directed the Defendants to respond to Plaintiff's Motions for Emergency Relief (Docs. 17, 18). Plaintiff has now filed a total of seven documents seeking emergency relief (Docs. 17, 18, 39, 43, 48, 53, 63). The Court has conducted two hearings on the many motions. At the most recent hearing on November 6, 2024, Plaintiff mentioned the latest Motion (Doc. 63), which arrived at the Court two days after the hearing. At the November 6th hearing, the Court explained to Plaintiff that his continual

motion practice was straying further and further from the merits of his case. The latest Motion (Doc. 63) will now be denied as unrelated to the underlying claims in this lawsuit.

## Background

Plaintiff's underlying lawsuit concerns a few instances in the Spring of 2024 when he was allegedly forced to shower in the presence of homosexual inmates, a situation which ultimately led to a scuffle between inmates in the shower.

The operative claims in the case after initial review are:

**Claim 1:** **Eighth Amendment cruel and unusual punishment claim against Defendant Reid related to the April 7, 2024, shower incident;**

**Claim 2:** **Eighth Amendment cruel and unusual punishment claim against Defendants Pedroley and Robert related to the April 8, 2024, shower incident;**

**Claim 3:** **Eighth Amendment cruel and unusual punishment claim against Defendant Reid for the final April 2024 shower incident that resulted in a physical altercation;**

**Claim 4:** **Failure to intervene claim against Defendant Reid for the April 2024 shower altercation;**

**Claim 5:** **State law negligence claim against Defendant Reid for the last April 2024 shower incident that resulted in the altercation.**

The initial motions for emergency relief (Docs. 17 and 18) alleged that Defendant Reid orchestrated an attack on Plaintiff by a fellow inmate in retaliation for the filing of this lawsuit. Concerned with the threat of immediate physical violence after a lawsuit was filed, the Court held a hearing and ultimately ordered that the Defendants notify the Court if Defendant Reid was assigned to work Plaintiff's cellhouse, or if Plaintiff was relocated to reside near Defendant Reid. (Doc. 52). At the November 6th hearing, the

Court learned that Defendant Reid now works at the Menard Medium Security Unit and is not in the same building as Plaintiff.

Plaintiff's second batch of requests for emergency relief concerned allegations that Defendant Dalton Robert had cornered and assaulted Plaintiff over this litigation. (Doc. 53). At the November 6th hearing, the Court heard testimony from Plaintiff and Robert, and ultimately concluded there was no immediate threat to Plaintiff's safety. (Doc. 62).

## The New Motion

In the latest Motion (Doc. 63), Plaintiff now alleges that a non-party officer—C/O Hart—has begun to harass him about dropping his lawsuit against Defendant Robert. Plaintiff alleges that this harassment occurred the day before the November 6th hearing, and that his cell was shaken down, he and his cellmate were harassed, and he was maced during this event. (Doc. 63). He included an affidavit from his cellmate attesting to this series of events. As relief he seeks a "restraining order" against C/O Hart, C/O Robert, Sgt. McDonald, C/O Lloyd, C/O Reid, and C/O Pedroley. He also seeks an immediate transfer to a medium security facility.

## Analysis

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must also decide

whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g.*, *Tatum v. Hunter*, Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

Throughout the entirety of this litigation, the Court has taken Plaintiff's claims about his physical safety seriously. However, as explained at the November 6th hearing, Plaintiff's requests for injunctive relief are beginning to expand far beyond the bounds of this case. Specifically, his allegations in the latest motion now speak of potential retaliation or harassment by a non-party officer. There are no operative claims in this case about retaliation. Plaintiff seeks injunctive relief against non-parties C/O Hart, Sgt. McDonald, and C/O Lloyd. He also seeks protection from C/O Reid, which he has already in essence been granted by the directive that Defendants' notify the Court if Reid and Plaintiff are going to be located in the same area of the prison. He seeks protection from Defendant Pedroley without explaining what specific threat Pedroley poses, and he again repeats his request for protection from Robert which was just denied last week after a hearing with live testimony. Against this backdrop, the Court does not find it appropriate to further entertain requests for injunctive relief about retaliation in this case. If Plaintiff continues to face issues of this nature, he should begin with the prison grievance procedure. If that is unsuccessful, he may consider a new and distinct lawsuit, or he may attempt to amend his complaint.

The Court also notes from a technical perspective that Plaintiff's "motions for emergency relief" have not been clearly defined by the bounds of Federal Rule of Civil Procedure 65, which provides the mechanism for a party to seek early injunctive relief. Rule 65(b) contemplates the possibility of a "temporary restraining order," which is relief available even before the opposing party can be heard, but that lasts for only 14 days. For a TRO to issue, the movant must clearly show that he will suffer immediately and

irreparable loss or injury before the adverse party can be heard, and he must demonstrate that he made efforts to notify the adverse party or explain why notice should not be required. Fed. R. Civ. P. 65(b)(1). Plaintiff has not demonstrated efforts to notify the adverse party, nor has he satisfactorily explained why he should not be required to do so; thus he could not establish a basis for a TRO. By contrast, Rule 65(a) contemplates a preliminary injunction, a form of injunctive relief that may be granted after the opposing party can be heard with the intention of preserving the status quo for litigation. Because Plaintiff is a pro se litigant, the Court has interpreted his requests broadly as requests for lasting preliminary injunctive relief, but with any future motions, Plaintiff should take care to explain which type of injunctive relief it is that he seeks under Rule 65.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Seventh Motion for Emergency Relief (Doc. 63) is **DENIED** because it seeks relief unrelated to the operative claims and parties in this case.

**IT IS SO ORDERED.**

Dated: November 13, 2024

/s *David W. Dugan*

DAVID W. DUGAN
United States District Judge